[Crim. No. 251.    First Appellate District.—July 11, 1910.]

THE PEOPLE, Respondent, v. J. J. ARBERRY, Appellant.

CRIMINAL LAW—ATTEMPT TO OBTAIN MONEY BY FALSE PRETENSES—SUPPORT OF VERDICT.—Upon appeal from a judgment of conviction of the crime of attempting to obtain money under false pretenses, and from an order denying a new trial, the testimony for the prosecution must be presumed to be true, and the facts proved are sufficient to support the verdict of guilty.

ID.—FALSE PRETENSES BY ADVERTISING PHYSICIAN — FATAL HEART DISEASE — SUBSTANTIAL CONFORMITY OF INFORMATION TO PRELIMINARY COMPLAINT.—Where the false pretenses were made by an advertising physician that a young man had fatal heart disease, in an attempt to obtain money from him and his aunt, in the sum of $200 to cure the same, it is held that the information charging the same was in substantial conformity to the preliminary complaint before the committing magistrate.

ID.—EXACT CONFORMITY OF INFORMATION TO COMPLAINT NOT ESSENTIAL. Where the committing magistrate held the defendant to answer for the crime of attempting to obtain money by false pretenses, indorsed upon and referred to in the complaint, and the information charges the defendant with the same offense, the statute is sufficiently complied with. It is not contemplated that the information should contain a statement of the crime in the exact language or word for word the same as stated in the complaint filed before the committing magistrate.

ID. — GENERAL STATEMENT OF OFFENSE IN ORDER OF COMMITMENT.— Under section 872 of the Penal Code, the order of commitment is only required to state generally the nature of the offense with which the defendant is charged; and where the order of commitment here made stated generally the crime of obtaining money by false pretenses, and stated that there is sufficient cause to believe the defendant guilty thereof, the order sufficiently complied with the statute.

ID.—DEMURRER SUSTAINED TO FIRST INFORMATION — TIME FOR NEW INFORMATION—REASONABLE TIME—EXTENSION—PRESENCE OF DE-

FENDANT.—Where a demurrer was sustained to a first information, under section 1008 of the Penal Code, which provides for filing a new information, in the discretion of the court, but fixes no time therefor, the court may allow a reasonable time in which to file it. Where ten days were allowed in the presence of the defendant, and an extension of five additional days were allowed in his presumed presence, the contention of the defendant that the new information was invalid because not filed within the ten days is not sustainable. The defendant was not required to be present when the information was filed; and it would seem that an order extending time to file it is not a proceeding requiring his presence.

ID.—NEW INFORMATION SUFFICIENT—DEMURRER PROPERLY OVERRULED.— The new information states facts sufficient to constitute a public offense, and a demurrer thereto was properly overruled.

ID.—STATEMENT OF VALVULAR HEART DISEASE ONE OF FACT.—The defendant's statement that the young man was suffering from a valvular disease of the heart was a statement of fact. It was not given as an' opinion, but it was a statement voluntarily made by defendant to a person from the country ignorant of medicine and disease, and who had the right to rely upon a physician's honor and integrity. It is not pretended that the statement is true and it was made contemporaneously with an attempt to obtain an additional sum of $200 from his aunt, who had recently paid the physician the same sum for a previous pretended cure of the same young man for an abscess of the prostate gland.

ID.—ESTOPPEL OF DEFENDANT—ABSENCE OF MONEY PREVENTING CRIME. The defendant is estopped to say that the young man's aunt had no money, so that it would have been impossible to have accomplished the contemplated crime.

ID.—ATTEMPT AND USE OF MEANS SUFFICIENT.—It is sufficient that defendant made the attempt to get the money, and used means apparently adapted to the end in view, although circumstances independent of defendant's will left the crime uncommitted. He made a false statement to the young man's aunt as to an ailment that had no existence, that he could cure it, that it was worth $300 to cure it, but that he agreed to cure it for $200.

ID. — DISTINCTION AS TO RESPONSIBILITY BETWEEN HONEST AND DISHONEST PHYSICIANS.—There is little danger of an honorable, upright physician being held to criminal account for a mistaken diagnosis, but where a dishonest physician or quack, who seeks opportunities to thrive and become wealthy off the ignorance and stupidity of his patients, has made a willfully false statement as to a mortal disease, solely with the view of obtaining money from the victim or his relatives, the law should deal severely with such physician. The fact that he is a licensed physician will not be allowed as a cloak to shield him from all responsibility for statements

willfully made with the sordid view of obtaining the money of the unwary.

ID.—LETTERS SENT BY DEFENDANT ADMISSIBLE.—Letters sent by the defendant to the young man's aunt, which sufficiently connected the defendant therewith, and with the demands and statements therein made, were properly admitted in evidence.

ID.—EVIDENCE OF PREVIOUS CRIME ADMISSIBLE—QUALIFIED PURPOSES.— Evidence of the previously consummated crime of obtaining the money of the young man's aunt under the false pretense that he had an abscess of the prostate gland was admissible as a prior transaction between the same parties, not for the purpose of showing another and distinct crime, but to show the intent of the defendant in representing to the aunt that her nephew had valvular disease of the heart, and as bearing on the question whether or not his statement was made with the intent of procuring money and in violation of law.

ID.—INSTRUCTIONS—PROPER CHARGE AND REFUSAL OF REQUESTS.—It was not error to refuse requested instructions covered by the charge. It is held that there was no substantial error in the charge, or in the refusal of any requests, but that the court fairly and fully stated the substance of the law applicable to the evidence and the issue to be determined by the jury.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Carroll Cook, and Lloyd S. Ackerman, for Appellant.

U. S. Webb, Attorney General, and W. W. Kaufman, for Respondent.

COOPER, P. J.—The defendant prosecutes this appeal from an order denying his motion for a new trial, and from a judgment convicting him of the crime of an attempt to obtain money by false pretenses. There is evidence which, if true (and we must so presume upon this appeal in view of the finding of the jury), shows the following facts:

Ulysses Muscio, a young man about twenty-one years of age, resided at Edna, in the county of San Luis Obispo. He had not been very well, and was troubled with pains in his back, and either needed or imagined that he needed the advice and

aid of a physician. He had read in the San Francisco "Examiner" the advertisement of "Dr. Taylor & Co. at 721 Market street," which advertisement stated the ability and skill of the doctors in charge, and their undertaking specially to cure all diseases of men and youths. He came to San Francisco on July 18, 1909, and on the following day, with the advertisement in his hands, he went to "Dr. Taylor & Co., 721 Market street," and asked to see Dr. Taylor. The defendant appeared and stated to Muscio that he was Dr. Taylor, and at all times thereafter was addressed by Muscio as Dr. Taylor. Muscio was taken into a consultation room and examined by defendant, who by manipulation of the prostate gland obtained therefrom a milky fluid—an easy thing for a physician to do—which he showed to Muscio, and without any examination of it, microscopic or otherwise, informed him that it was pus from an abscess of the prostate gland, and demanded of Muscio $300 to cure him. Muscio having only $10 with him, defendant took that, and agreed that for $200 more he would cure him. At defendant's suggestion and dictation Muscio wrote to his aunt, Mary Tomasini, a letter as follows: "Dear aunt,—I am sick and won't be home until the latter part of the week, and I need $200. Please send it to me at once to this address." This letter was written on the letter-head of "Dr. Taylor & Co." On July 22d a letter was received from the aunt, addressed to Muscio, care of "Dr. Taylor & Co.," which letter was opened by defendant and then handed back to Muscio. It contained a check for $200, which Muscio indorsed and handed to defendant, and which was paid. Defendant then handed Muscio a receipt for $210, signed "Dr. Taylor & Co.," guaranteeing a cure of the alleged abscess of the prostate gland. On the same day a letter was mailed in San Francisco, on the letter-head of "Dr. Taylor & Co.," addressed to the aunt, stating that in reply to her letter of July 22d Muscio was suffering from an abscess of the prostate gland, but that he was doing very nicely "under our care," and that he could return home in a few days. On the following day, and after the receipt of the $210, upon the same letter-head, signed in typewriting and dated July 23d, there was deposited in the United States mail at San Francisco, and received by the aunt, Mrs. Tomasini, the following letter: "Since writing you yesterday in regard to your nephew

Ulysses Muscio, we have discovered a serious complication, and as he is very nervous we deem it best not to say anything to him, at least until we have seen you, and would advise you to come to San Francisco at once and call at this office before seeing him, as we desire to have a personal interview with you as soon as possible. You need not be alarmed however, as there is no immediate danger, but trust you will call as advised." After receiving this letter the aunt came to San Francisco, and was met by a relative of hers, and together they immediately went, accompanied by Muscio, to consult Dr. Spencer, who, after an examination, stated that Muscio did not have, and had not had, an abscess of the prostate gland. Thereafter the aunt, in company with her relative, went to the office of "Dr. Taylor & Co.," and asked for Dr. Taylor, and in response thereto they were presented to defendant as being Dr. Taylor, who informed them that he was Dr. Taylor. They then went into a private office, and in answer to questions the defendant said that he had written the letter in regard to the serious complications he had discovered in Muscio's case. Defendant then stated to the aunt, in the presence and hearing of Crespi, that Muscio had a valvular disease of the heart, that he might drop dead at any moment, but that he, defendant, could cure him, that he would have to have the care of Muscio for a week or ten days and inject serum, which he said was very expensive, but that at the end of that time Muscio could go home to his aunt and take medicines which he would prescribe for him. Defendant stated that it was worth $300 to cure Muscio of the valvular disease of the heart, but that he had been paid $200 for curing the abscess of the prostate gland, and that he would cure him of the valvular disease of the heart for the additional sum of $200. This sum was requested by the defendant from the aunt after his statement that Muscio had a valvular disease of the heart and that he could cure him. The aunt and Crespi then left defendant's office under the pretense of getting the money, but never returned. Muscio was afterward examined by Dr. Spencer, Dr. Lartigan and Dr. Schmall; and they found not only that he had never had an abscess of the prostate gland, but that his heart was normal and that he had no valvular trouble of that organ. The testimony of these physicians, which is not con-

13 Cal. App.—48

tradicted, is that a valvular disease of the heart can be determined with absolute certainty.

This brings us to the discussion of the errors complained of by defendant, and which he claims are sufficient to justify a reversal of the case.

The defendant claims that the court erred in denying his motion to dismiss the information, which was made upon the ground that prior to the filing thereof the defendant had not been legally committed by a magistrate for the offense charged in the information. It is stated in his brief that by taking the complaint filed before the committing magistrate and the commitment and reading them together, ''it will be seen that the new information filed does not charge the defendant with the same crime for which he was held to answer by the committing magistrate.'' It is not stated in the brief as to the respects wherein the crime charged in the information differs from the crime for which defendant was held to answer, and upon the examination we have been able to give we can find none. The complaint before the committing magistrate charged the defendant with the crime of attempting to obtain money by false and fraudulent pretenses, by falsely and willfully representing to Mary Tomasini that Muscio ''had an affection and disease of the heart of a serious nature, to wit, that said Ulysses Muscio had valvular disease of the heart, and that a valve of the heart of said Ulysses Muscio was in a diseased condition, and did further pretend and represent to the said Mary Tomasini that the said affection or disease of the heart of said Ulysses Muscio did endanger the life of said Ulysses Muscio, and that because of the said affection and disease of the heart of said Ulysses Muscio he, said Ulysses Muscio, was apt to drop dead at any time, and that the said affection or disease of the heart of said Ulysses Muscio required immediate medical attention, and that said affection or disease of the heart he, the said John J. Arberry (whose real name is unknown to this complainant), could and would cure for the price or sum of two hundred dollars, and no less.'' At the conclusion of the testimony taken before the committing magistrate he made and indorsed on the complaint the following order, to wit: ''I find that the offense as charged in the complaint, felony, to wit, attempt to obtain money by false pretenses, has been committed, and that there is sufficient

cause to believe the defendant John J. Arberry guilty thereof, and order that he be held to answer for the charge before the honorable superior court of the City and County of San Francisco.''

The amended information charged the defendant with a felony, to wit, attempt to obtain money by false pretenses, by the defendant falsely representing and pretending that Muscio ''had an affection and disease of the heart of a serious nature, to wit, that said Ulysses Muscio had valvular disease of the heart, that a valve of the heart of said Ulysses Muscio was in a diseased condition, and did further pretend and represent to the said Mary Tomasini that the said affection or disease of the heart of said Ulysses Muscio was of such nature and character that said disease did endanger the life of said Ulysses Muscio, and further that because of the said nature and character of said disease and affection of the heart of said Ulysses Muscio, he the said Ulysses Muscio was apt to drop dead at any time, and further that the said affection or disease of the heart of said Ulysses Muscio was of such a nature that the same required immediate medical attention, and did then and there demand for such medical attention the price or sum of two hundred dollars in gold coin of the United States of America, and did then and there request the said Mary Tomasini to pay to him the said sum of Two hundred dollars in gold coin of the United States of America, for the purpose of effecting a cure of said alleged affection or disease of the heart of said Ulysses Muscio.''

The committing magistrate held the defendant for the crime of attempting to obtain money by false pretenses, and the information charges the defendant with the same crime. This is a sufficient compliance with the statute. In our opinion, it was never contemplated that the information should contain a statement of the crime in the exact language or word for word the same as stated in the complaint filed before the committing magistrate. The code provides (Pen. Code, sec. 872) that if it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, he must make or indorse on the complaint an order to the effect: ''It appearing to me that the offense in the within complaint mentioned (or any offense, according to the fact, stating generally the nature thereof),

has been committed, and that there is sufficient cause to believe the within named A. B. guilty thereof, I order that he be held to answer to the same.'' The order herein made stated generally the nature of the offense and sufficiently complied with the statute.

The demurrer of defendant was sustained to the first information. The code (Pen. Code, sec. 1008) provides that when a demurrer is sustained to an indictment or information it is a bar to another prosecution for the same offense ''unless the court being of the opinion that the objection on which the demurrer is allowed may be avoided in a new indictment or information, directs the cause to be submitted to another or the same grand jury, or directs a new information to be filed.'' The court upon sustaining the demurrer, being of the opinion that the objection on which the demurrer was allowed could be avoided, directed that a new information be filed. The order made by the court, as shown by the reporter's notes, did not specify any time within which the new information should be filed; but the clerk's minutes show that the district attorney was given ten days from the date of the order in which to file such information. It is now contended that the new information was not filed within the ten days but within fifteen days, and that the court made an order in the absence of defendant and his counsel allowing the district attorney the additional five days; that such order was void, and hence the court lost jurisdiction.

The section last quoted is silent as to the time in which the new information is to be filed; and it would seem that under the law the district attorney would have a reasonable time within which to file such new information. It is not contended that it was not filed within a reasonable time. The court directed the district attorney to file it. Such order was made in the presence of the defendant, and the additional time was not material unless the court had made an order extending the time beyond reasonable limits. However, counsel has failed to call our attention to any testimony or record showing that defendant was not present when the order was made extending the time. The clerk's minutes show that the defendant was present accompanied by his counsel, and there is nothing that we have been able to find in the reporter's notes to the contrary. Not only this, but there is nothing in the statute re-

quiring a defendant to be present when an information or
indictment is filed. If the filing of an indictment against a
defendant is not a proceeding during his absence, it is difficult
to see how the giving of an order extending time to file it is
such proceeding.

Nor did the court err in overruling the demurrer to the
amended information. It states facts sufficient to constitute
a public offense. The statement that the young man was suf-
fering from a valvular disease of the heart was a statement of
a fact. It was not given as an opinion, but it was a state-
ment voluntarily made by defendant to a person from the
country, ignorant of medicine and diseases, and who had the
right to rely upon a physician's honor and integrity. It is not
pretended that the statement is true, and it was made just at
the time and contemporaneous with the attempt to get an
additional $200 from the aunt. It does not lie in the mouth
of defendant to say that Mrs. Tomasini had no money,
so that it would have been impossible for him to have
accomplished the contemplated crime. He made the attempt
to get the money. He made a false statement as to an ailment
that had no existence; and not only this, but stated that he
could cure it. From his statement it was worth $300 to cure
an ailment that, as a fact, had no existence, and he agreed to
cure such alleged ailment for $200. A person who has at-
tempted to pick the pocket of another would not be allowed to
defend himself by proving that there was nothing in the pocket
which he attempted to pick. So a robber, who holds up and
attempts to rob the United States mail, would not be allowed
to call postoffice officials or others to prove that there was noth-
ing of value in the mail, and hence that no robbery could have
been committed. It is sufficient that the means was appar-
ently adapted to the end in view, although circumstances in-
dependent of the will of defendant left the crime uncommitted.
The profession of medicine is an honorable and useful one, and
the skillful, careful, honest physician who devotes his time—
often his days and nights—to the relief of suffering humanity
is a blessing to the community in which he resides. But while
this is true, there is probably no profession or calling which
affords greater opportunities for the dishonest quack to thrive
and become wealthy off the ignorance and stupidity of his
patients. There is little danger of an honorable, upright phy-

sician being held to criminal account for a mistaken diagnosis; but where a dishonest physician has made a willfully false statement as to a mortal disease solely with the view of obtaining money from the victim, the law should deal severely with such physician.

We do not mean to even intimate by what has been said that the law will hold a physician liable criminally for a statement honestly, but mistakenly, made as to his professional judgment in regard to a disease. But the fact that one is a licensed physician will not be allowed as a cloak to shield him from all responsibility for statements willfully made with the sordid view of obtaining the money of the unwary.

The letters sent to Mrs. Tomasini signed in typewriting "Dr. Taylor & Co." were properly admitted in evidence. The evidence sufficiently connected the defendant with them and with the demands and statements therein made.

The court did not commit error in allowing evidence as to the prior statement that Muscio had an abscess of the prostate gland, and the fact that the defendant received $200 to cure that. The transaction was with the same parties, from the same "Dr. Taylor & Co.," the defendant in each case representing himself to be Dr. Taylor, and each transaction was with the aunt of Muscio. It was admitted, not for the purpose of showing another and distinct crime, but to show the intent of the defendant in making the representations to the aunt that Muscio had valvular disease of the heart, and the question as to whether or not his statement was made with the intent of procuring money and in violation of the law.

The defendant complains of the refusal of the court to give the following instruction: "You are instructed that no matter how strong may be the probability in favor of the hypothesis of guilt, if it is nothing more than a probability, the prosecution fails and the defendant must be acquitted." The court elsewhere gave the substance of the instruction. In fact, the very next instruction given at defendant's request was the following: "You are instructed that suspicion, no matter how strong it may be, cannot justify you in convicting the defendant of the crime charged. The law does not permit a conviction of a crime upon suspicion, be it ever so strong." And the court elsewhere instructed the jury that "Mere probabilities are not sufficient to warrant a conviction."

Complaint is further made that the court refused to give an instruction asked by the defendant to the effect that it is not sufficient that the facts proved coincide with, account for, and render probable the hypothesis of guilt, but they must exclude to a moral certainty and beyond all reasonable doubt every other hypothesis but the single one of guilt. The instruction requested related to a statement of the law in connection with circumstantial evidence; and if it was material in the case, we are of the opinion that it was substantially given elsewhere. The court in other instructions stated to the jury: ''The guilt of the accused must be proved and established beyond all reasonable doubt,'' and ''Neither a mere preponderance or any weight of preponderant evidence is sufficient for the purpose of conviction''; and finally, ''It is not sufficient that the circumstances proved coincide with, account for and therefore render probable the hypothesis sought to be established by the prosecution; but they must exclude beyond all reasonable doubt to a moral certainty every other reasonable hypothesis but the single one of guilt. Should they fail to so establish defendant's guilt in a single particular, it is the duty of the jury to render a verdict of not guilty.''

Other errors are claimed in regard to the giving or the refusal to give instructions, but to discuss them in detail would prolong this opinion to an unnecessary length. It is sufficient to say that we have examined the instructions given and the instruction refused, and we find no substantial error in the giving of any instruction or the refusal to give any. The court fairly and fully stated the substance of the law applicable to the evidence and the issue to be determined by the jury. We find no error in the record that would justify us in reversing a case that appears to have been fairly tried.

The judgment and order are affirmed.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 8, 1910.